The STATE of Ohio, Appellant,

v.

BRADEN, Appellee.

[Cite as *State v. Braden*, 197 Ohio App.3d 534, 2011-Ohio-6691.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 2011–A–0001.

Decided Dec. 27, 2011.

535

Thomas L. Sartini, Ashtabula County Prosecuting Attorney, and Shelley M. Pratt, Assistant Prosecuting Attorney, for appellant.

Marie Lane, Ashtabula County Public Defender, for appellee.

TIMOTHY P. CANNON, Presiding Judge.

{¶ 1} Appellant, the state of Ohio, appeals the December 30, 2010 decision and entry of the Ashtabula County Court of Common Pleas dismissing the charges pending against appellee, Aaron Braden. The trial court determined that Braden's statutory and constitutional rights to a speedy trial were violated. Based on the following, we reverse the decision of the trial court and remand the matter for proceedings consistent with this opinion.

{¶ 2} On November 1, 2004, Braden was arrested in Ashtabula County pursuant to outstanding warrants issued by Ohio and Pennsylvania authorities. As a result of Braden's actions during this arrest, additional criminal complaints were filed in Ashtabula County Court, Eastern Division ("Eastern County Court"), charging Braden with two counts of attempted aggravated murder, two counts of felonious assault, two counts of vandalism, and one count of fleeing and eluding, captioned case No. 04 CRA 709. These complaints were filed on November 3, 2004.

{¶ 3} On this date, Braden appeared in the Eastern County Court for his initial appearance on the charges. Braden signed a waiver of time for the hearing, and a preliminary hearing was scheduled for December 14, 2004.

{¶ 4} Also on November 3, 2004, an extradition to Pennsylvania was filed in the Eastern County Court. The court held an extradition hearing. That journal entry stated that Braden "appeared before the Court in the custody of the Ashtabula County Sheriff, pursuant to warrant from CRAWFORD County, PA. The nature of the proceedings was explained and the defendant was advised of his rights." Braden waived extradition and was delivered into the custody of authorities from Crawford County, Pennsylvania.

{¶ 5} On December 14, 2004, the court issued an arrest warrant for Braden when he failed to appear for the preliminary hearing in the aforementioned case. The bench warrant indicated that "Defendant has been in Erie County Pa. prison since November 5th."

{¶ 6} As a result of Braden's actions during his arrest on November 1, 2004, the Ashtabula County Grand Jury returned an indictment on January 24, 2005, charging him with similar offenses as those outlined above: two counts of felonious assault on a police officer, two counts of attempted murder, failure to comply with the order of a police officer, and one count of vandalism. This case, which is the case at issue, was assigned case No. 05 CR 31.[1] Appellant, in its

---

1. Based on the events of November 1, 2004, a codefendant, Thomas Powers, was also charged with several crimes and convicted in 2005.

request for the issuance of a warrant upon indictment, noted that Braden was "currently incarcerated somewhere in Pennsylvania."

{¶ 7} On June 16, 2006, the Department of Corrections of the Commonwealth of Pennsylvania sent the Ashtabula County Clerk of Courts a detainer action letter, which was forwarded to the Ashtabula County Prosecutor's Office.

{¶ 8} On August 21, 2006, appellant lodged a detainer against Braden.

{¶ 9} On September 2, 2010, Braden was served with the indictment at issue.

{¶ 10} On September 7, 2010, Braden was arraigned and entered a plea of not guilty to all charges contained in the indictment.

{¶ 11} On September 30, 2010, Braden filed a motion to dismiss the present case, stating that his statutory and constitutional speedy-trial rights had been violated. The trial court granted Braden's motion on December 30, 2010.

{¶ 12} Appellant filed a timely notice of appeal and asserts the following assignment of error:

{¶ 13} "The trial court erred in granting appellee's motion to dismiss."

{¶ 14} Appellant's argument under this assigned error is two-fold. First, appellant argues that once Braden began serving his term of imprisonment in Pennsylvania, the Interstate Agreement on Detainers ("IAD"), not Ohio's speedy-trial statute, became applicable. Further, appellant maintains that the provisions of the IAD place the burden on a prisoner to request final disposition, and since Braden failed to request final disposition, it was not required to follow the 180-day time period for which he must be brought to trial. Appellant maintains that since Braden did not invoke the IAD, the term of his incarceration in Pennsylvania was tolled for speedy-trial purposes.

{¶ 15} Second, appellant claims that once Braden was released from prison, the IAD ceased to govern his speedy-trial rights and Ohio's speedy-trial statute became applicable. Appellant then asserts that Braden's speedy-trial rights were not violated.

{¶ 16} We first analyze the IAD and determine whether, based on the facts of the instant case, the IAD placed such a burden on Braden.

{¶ 17} **The Interstate Agreement on Detainers**

{¶ 18} "The IAD is an interstate compact to which Ohio and Pennsylvania are party states. In Ohio, the General Assembly has enacted the IAD at R.C. 2963.30. The stated purpose of the IAD is 'to encourage the expeditious and orderly disposition * * * and determination of the proper status of any and all detainers based on untried indictments, informations or complaints.' Article I.

{¶ 19} "Under the provisions of the IAD, there are two methods by which to initiate the return of a prisoner from a sending state to a receiving state for the

purpose of disposing of detainers based on untried indictments, informations, or complaints. The prisoner may commence the process pursuant to Article III or, alternatively, a prosecutorial authority may initiate the return under the auspices of Article IV." *State v. Popalardo* (Mar. 26, 1999), 11th Dist. No. 97–L–302, at 5.

{¶ 20} The IAD, under Article III(a), provides that if a prisoner notifies the court and the prosecuting attorney of his request for final disposition, he must be brought to trial within 180 days after such notification. This time period begins to run when the prisoner's request is actually delivered to the court and prosecuting attorney.

{¶ 21} The IAD, under Article IV, provides a mechanism whereby a prosecutor who has lodged a detainer against a prisoner in another state can secure the presence of the prisoner for disposition of outstanding charges. The prosecutor has 120 days from the date of the prisoner's return to the state in which to commence trial.

{¶ 22} "In either case, the provisions of "the" IAD are triggered only when a detainer is filed with the institution currently holding the prisoner. * * * A 'detainer' is 'a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent.' " *State v. Anderson*, 189 Ohio App.3d 697, 2010-Ohio-5068, 939 N.E.2d 1317, at ¶ 11, quoting *Carchman v. Nash* (1985), 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516.

{¶ 23} This court has determined that if the IAD is properly invoked, those requirements control over the state speedy-trial statute. See *State v. Gall* (Feb. 28, 1992), 11th Dist. No. 91–T–4530, 1992 WL 217999. Further R.C. 2945.71 (Ohio's speedy-trial statute) "shall not be construed to modify in any way section 2941.401 [an intrastate transfer provision] or sections 2963.30 to 2963.35 of the Revised Code [the IAD]." R.C. 2945.71(F).

{¶ 24} We review a trial court's decision interpreting the IAD de novo. See, e.g., *State v. Anderson*, 189 Ohio App.3d 697, 2010-Ohio-5068, 939 N.E.2d 1317, at ¶ 15.

{¶ 25} The trial court found that neither party properly invoked the IAD. The trial court first found that although appellant filed a detainer against Braden, it failed to properly utilize Article IV of the IAD. That is, appellant did not make any request for temporary custody of Braden but waited six years until his release from custody in Pennsylvania[2] to serve him with the indictment. The

2. We note that the December 30, 2010 judgment of the trial court stated the following: "It appears that [Braden] remained incarcerated in some capacity in Pennsylvania from Novem-

trial court further noted that although a detainer was filed, Braden failed to invoke the time provisions outlined in the IAD, because he did not follow the procedure outlined in Article III. We agree.

{¶ 26} Appellant lodged a detainer against Braden on August 21, 2006, who was serving a term of imprisonment in Pennsylvania; however, appellant failed to present a written request for temporary custody or "availability to the appropriate authorities of the state in which the prisoner is incarcerated." Article IV(a).

{¶ 27} Further, although a detainer was in fact filed, the IAD does not require a prosecutor to file a detainer within a reasonable time when the location of an incarcerated individual is known. "The act does not contain any provisions setting a deadline for the state to file a detainer. Nor does the act delineate any sanctions to be administered when the state negligently delays in filing a detainer. In fact, the IAD itself does not actually require the state to file a detainer at all." *Anderson*, 189 Ohio App.3d 697, 2010-Ohio-5068, 939 N.E.2d 1317, at ¶ 19.

{¶ 28} We find the aforementioned reasoning persuasive in determining that a prisoner is not required to file a request for final disposition under Article III of the IAD. The plain language of the IAD does not impose such a duty on a prisoner, but allows a prisoner, if he so chooses, to require the state to bring him to trial within 180 days of the notification. Like appellant, Braden did not invoke the IAD during his incarceration.

{¶ 29} Moreover, we concur with the reasoning of the trial court that appellant cannot attempt to use the IAD as a shield from Ohio's speedy trial statute and then fail to actually utilize the IAD for its stated purpose. "The Interstate Agreement on Detainers was designed to provide a mechanism for the speedy disposition of outstanding charges, not as a mechanism to extend the time within which the state may bring a defendant to trial after the speedy trial limits had expired." *State v. Koester*, 3d Dist. Nos. 16–03–07 and 16–03–08, 2003-Ohio-6098, 2003 WL 22700734, at ¶ 22.

### Speedy–Trial Rights

{¶ 30} Finding the IAD not applicable in the instant case, we determine whether Braden's statutory and constitutional rights to a speedy trial were violated.

---

ber 3, 2004 until he was delivered into custody of Ohio authorities on September 2, 2010. According to Defendant's motion, he was granted parole and released on August 6, 2010. However, records submitted by the prosecution reveal that on August 6, 2010, a motion for extradition hearing was held in Fayette County, Pennsylvania, and [Braden's] bail was set at $100,000.00 cash. The Fayette County records do not reflect that the $100,000.00 bail was ever posted."

{¶ 31} The Supreme Court of Ohio has stated:

{¶ 32} " 'The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to a speedy trial by the state. * * * This same right is assured an accused party by Section 10, Article I of the Ohio Constitution. * * *'

{¶ 33} "The General Assembly, in its attempt to prescribe reasonable speedy trial periods consistent with these constitutional provisions, * * * enacted R.C. 2945.71 * * *.

{¶ 34} " * * *

{¶ 35} "[F]or purposes of bringing an accused to trial, the statutory speedy trial provisions of R.C. 2945.71 *et seq.* and the constitutional guarantees found in the United States and Ohio Constitutions are coextensive." *State v. O'Brien* (1987), 34 Ohio St.3d 7, 8–9, 516 N.E.2d 218.

{¶ 36} "Speedy trial issues present mixed questions of law and fact. * * * We accept the facts as found by the trial court on some competent, credible evidence, but freely review the application of the law to the facts." *State v. Kist,* 173 Ohio App.3d 158, 2007-Ohio-4773, 877 N.E.2d 747, at ¶ 18, citing *State v. Hiatt* (1997), 120 Ohio App.3d 247, 261, 697 N.E.2d 1025.

{¶ 37} "It is well-established that the Ohio speedy trial statute is mandatory, constitutional, and must be construed strictly against the state. * * * Once a criminal defendant shows that he was not brought to trial within the permissible period, the accused presents a prima facie case for dismissal. * * * At that point, the burden shifts to the state to demonstrate that sufficient time was tolled or extended under the statute." *State v. Rumer,* 6th Dist. No. L–07–1178, 2009-Ohio-265, 2009 WL 154257, at ¶ 9.

{¶ 38} Since Braden was charged with a felony, he was required to be brought to trial within 270 days of his arrest. R.C. 2945.71(C)(2). If the accused is not brought to trial within the time specified by R.C. 2945.71, the accused "shall be discharged" "upon motion made at or prior to the commencement of trial." R.C. 2945.73(B).

{¶ 39} In dismissing the case based on statutory grounds, the trial court found that Braden had not been tried within 270 days of his arrest. Although the trial court acknowledged that the time requirements as set forth in R.C. 2945.71 are subject to extensions in R.C. 2945.72, it determined that appellant did not use reasonable diligence to secure Braden's availability. The trial court further found that even if Braden's statutory right to a speedy trial was not violated, dismissal was warranted on constitutional grounds. The court reasoned that the six-year delay was both egregious and prejudicial.

{¶ 40} In determining whether an accused can waive his right to a speedy trial, the Supreme Court of Ohio has stated:

{¶ 41} "It is well-settled law that an accused may waive his constitutional right to a speedy trial provided that such a waiver is knowingly and voluntarily made. * * * Consistent with this principle, [the Supreme Court of Ohio] has found the statutory speedy trial provisions set forth in R.C. 2945.71 to be coextensive with constitutional speedy trial provisions. * * * Thus, we have held that an accused's express written waiver of his statutory rights to a speedy trial, made knowingly and voluntarily, also constitutes a waiver of his speedy trial rights guaranteed by the United States and Ohio Constitutions." *State v. King* (1994), 70 Ohio St.3d 158, 160, 637 N.E.2d 903. See also *O'Brien,* 34 Ohio St.3d at 9, 516 N.E.2d 218. ("We hold that, following an express written waiver of unlimited duration by an accused of his speedy trial rights the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection to any further continuances and makes a demand for trial, following which the state must bring him to trial within a reasonable time".)

{¶ 42} A review of the record reveals that appellant signed a waiver of speedy trial, which was filed on November 3, 2004. The waiver stated that Braden had been given "sufficient opportunity to consult with an attorney, or to question the court about [the] time limitations and effects of waiving them." The waiver also stated that Braden understood his speedy-trial rights, both statutory and constitutional, and that he "knowingly, intelligently and voluntarily waive[d] any and all applicable restrictions and limitations." Further, the waiver was unlimited in duration and nowhere in the record did Braden file a demand for trial.

{¶ 43} At the time Braden signed the speedy-trial waiver, it may have been a significant benefit to him, because other charges were pending and extradition was looming. After signing a fully informed waiver, his right to a speedy trial was waived but not gone forever. However, the protection afforded to an out-of-state prisoner such as Braden in this situation is embodied in the IAD. As noted above, in spite of every opportunity to do so, Braden never properly invoked those provisions.

{¶ 44} Appellant's assignment of error is well taken. Based on the opinion of this court, the judgment of the trial court is reversed and this matter is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WESTCOTT RICE and WRIGHT, JJ., concur.